FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2012 JAN 10 PM 2:19

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ELEANOR D. RANDALL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 110-156 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Eleanor D. Randall ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

### I. BACKGROUND

Plaintiff applied for DIB and SSI on March 14, 2006, alleging a disability onset date of October 21, 2004. Tr. ("R."), pp. 98-106. The Social Security Administration denied Plaintiff's applications initially, R. 52-55, and on reconsideration, R. 50-51. Plaintiff then

requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on February 11, 2009. R. 33-47. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as a Vocational Expert ("VE"). See id. On March 25, 2009, the ALJ issued an unfavorable decision. R. 9-22.

Applying the five-step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful employment since the alleged onset of disability (20 C.F.R. §§ 404.1571 et seq. & 416.971 et seq.).

2. The claimant has the severe impairments of left ulnar release at elbow, right carpal tunnel syndrome release at wrist, uncontrolled hypertension, and diabetes mellitus with neuropathy (20 C.F.R. §§ 404.1521 et seq. & 416.921 et seq.).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, & 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform sedentary work[1] except she can stand and/or walk for 45 minutes uninterrupted for a total of 3 hours out of an 8 hour workday; when sitting, requires the sit/stand option every hour without leaving her workstation; can occasionally finely manipulate with her left hand; can occasionally climb stairs and ramps; can never climb ladders or

---

[1]"Sedentary work" is defined as work that involves:

lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a).

2

scaffolds; can occasionally balance; can never crawl; cannot work on uneven terrain or in unprotected heights. In light of her RFC, the claimant is not capable of performing any past relevant work (20 C.F.R. §§ 404.1565 & 416.965).

5. Considering the claimant's age, education, work experience, RFC, and the testimony of the VE, there are other jobs that exist in significant numbers in the national and regional economy that the claimant can perform, including food and beverage order clerk, for which there are 4,000 jobs in Georgia and 154,000 jobs nationally, and call out operator, for which there are 1,900 jobs in Georgia and 50,000 jobs nationally (20 C.F.R §§ 404.1569, 404.1569a, 404.969, 404.969a). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from October 21, 2004, through March 25, 2009 (the date of the ALJ's decision).

R. 14-22.

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting reversal of the adverse decision. Plaintiff argues that the ALJ erred in his RFC assessment because he failed to account for all of Plaintiff's severe impairments and improperly discredited her subjective complaints; that the ALJ erred in finding that jobs existed in significant numbers in the national and regional economy that the claimant could perform; and that the AC erred in declining review in light of Plaintiff's submission of new evidence not considered by the ALJ. (See doc. no. 9 (hereinafter "Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiffs' applications for benefits was supported by substantial evidence and should be affirmed. (See doc. no. (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548

4

(11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

As noted above, Plaintiff argues, *inter alia*, that the Commissioner's decision is not supported by substantial evidence because of the ALJ's improper RFC assessment and because of the new evidence submitted to the AC. See Pl.'s Br., pp. 11-14, 15-18. The Commissioner disputes these contentions, arguing that the ALJ's disability determination, including his RFC assessment, is supported by substantial evidence, irrespective of the new evidence submitted to the AC. Comm'r's Br., pp. 4-7, 10-12. The Court finds the Commissioner's decision unsupported by substantial evidence in light of the new evidence submitted to the AC, making it unnecessary to reach Plaintiff's remaining arguments.

In assessing Plaintiff's RFC, the ALJ noted that "[t]he only treating or examining physicians who expressed an opinion as to [Plaintiff's] limitations are Drs. [John] Bieltz, [Aileen] Danko, and [Roberto] Barja, all being made in 2004." R. 19. Dr. Bieltz, Plaintiff's treating orthopedist, saw Plaintiff on various occasions during the latter part of 2004. R. 17. The ALJ noted that Dr. Bieltz stated in one of his treatment notes that Plaintiff's elbow pain

appeared "out of proportion" to her condition, based on a review of a prior electromyogram and nerve studies. R. 17, 171-75. Initially, Dr. Bieltz directed Plaintiff to work 40 hours per week, albeit without overtime, but following a later MRI he restricted her to one-handed work and referred her to an upper extremity surgeon. R. 17, 170.

During the same time frame, Plaintiff was seen by Dr. Danko, who placed Plaintiff on a 20-pound lifting restriction. R. 17, 187. The ALJ noted that Dr. Barja, who performed a "cubital tunnel release surgery" in October of 2004, restricted Plaintiff from working for several months before and after the surgery. R. 18, 195-218. Dr. Barja also stated that Plaintiff was unable to climb stairs or ladders and was restricted from lifting, pushing, pulling or reaching above shoulder height with her left arm. R. 18, 216-18. After identifying the evidence from Drs. Bieltz, Danko, and Barja as the only opinions regarding Plaintiff's limitations from treating or examining sources, the ALJ stated that the opinions of those physicians "are given little weight due to staleness." R. 19.

In reviewing the medical evidence, the ALJ also discussed the opinions of Dr. Luis Suarez and Dr. Ramona Minnis, non-examining state agency physicians who prepared reports addressing Plaintiff's RFC in November of 2006 and January of 2007, respectively. R. 18-19, 327-42. These reports are virtually identical, and both Dr. Suarez and Dr. Minnis concluded that Plaintiff was capable of performing work at the medium exertional level with a few additional minor postural and manipulative limitations.[2] Id. The ALJ gave "probative weight" to the opinions of Dr. Suarez and Dr. Minnis. R. 19. In addition, the ALJ discussed

---

[2]Medium work is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c) & 416.967(c).

6

a variety of other medical evidence that he accorded "probative weight," including 2008 treatment notes from Dr. Bieltz. See R. 18-19.

As discussed previously, the ALJ issued his unfavorable decision on March 25, 2009. R. 22. When Plaintiff sought review from the AC, she submitted new evidence in the form of a "Medical Opinion Re: Ability To Do Work-Related Activities (Physical)" from Dr. Bieltz. In the report, which is dated June 8, 2009, Dr. Bieltz opined, based on his prior treatment of Plaintiff and previous medical evidence, that she was unable to lift/carry more than ten pounds; that she was unable to stand and walk for more than two hours during an eight-hour workday; that she was likewise unable to sit for more than two hours per workday; that she would need the opportunity to shift at will from sitting or standing/walking; and that she would need to lie down three to four times per shift at unpredictable intervals. R. 401-02. Dr. Bieltz also noted that Plaintiff used a cane to walk, and he expressed his opinion that Plaintiff's neuropathy affected her capacity for reaching (including overhead), handling (gross manipulation), fingering (fine manipulation), feeling, and pushing/pulling. R. 403. According to Dr. Bieltz's report, Plaintiff's impairments would cause her to be absent from work more than three times per month. R. 404.

The AC stated that it considered this new evidence but found that it "[did] not provide a basis for changing the [ALJ's] decision." R. 1-2. Accordingly, the AC denied Plaintiff's request for review. Id.

Under Eleventh Circuit law, "when a claimant properly presents new evidence to the [AC], a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1262 (11th Cir.

2007). In other words, when the AC denies review despite the submission of additional evidence, the determinative inquiry is whether Plaintiff has submitted "new, material, chronologically relevant evidence" to the AC that "renders the decision of the [ALJ] to deny benefits unsupported by substantial evidence." Id. at 1261, 1266. "'New' evidence is evidence that is non-cumulative, and 'material' evidence is evidence that is 'relevant and probative so that there is a reasonable possibility that it would change the administrative result.'" Robinson v. Astrue, 365 F. App'x 993, 996 (11th Cir. 2010) (*per curiam*) (quoting Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987)). If Plaintiff meets this standard, remand is appropriate pursuant to sentence four of § 405(g). Ingram, 496 F.3d at 1266-67; Hoffman v. Astrue, 259 F. App'x 213, 220 (11th Cir. 2007) (*per curiam*) (noting that sentence four provides basis for remand when the AC fails to adequately consider additional evidence not presented to the ALJ).

In the instant case, the Court concludes that Plaintiff submitted new, material evidence to the AC that requires remand to the Commissioner for further consideration. As Plaintiff argues, see Pl.'s Br., pp. 15-16, Dr. Bieltz's report provides opinion evidence from a treating source that speaks directly to her RFC. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (noting that, absent good cause to the contrary, opinion of a treating physician is entitled to substantial or considerable weight). The ALJ specifically commented on the absence of such evidence, aside from the previously discussed 2004 opinions that he accorded little weight due to staleness. R. 19. Moreover, the only specific evidence that the Commissioner has pointed to in support of the ALJ's RFC assessment are the reports from Dr. Suarez and Dr. Minnis. Comm'r's Br., pp. 4-5. Notably, however, as opinions from

8

non-examining physicians, these reports are entitled to little weight to the extent that they contradict the opinion of a treating physician. See Spencer ex rel. Spencer v. Heckler, 765 F.2d 1090, 1093-94 (11th Cir. 1985) (*per curiam*). Indeed, the Commissioner concedes that Dr. Bieltz "opined [in the new report] that [P]laintiff had several limitations in excess of those identified by the ALJ." Comm'r's Br., p. 11.

In addition, the new evidence directly impacts multiple other issues raised by Plaintiff regarding the ALJ's decision. For example, Dr. Bieltz's report addresses the functional limitations resulting from Plaintiff's degenerative disc disease and hip pain, both of which the ALJ found to be non-severe impairments.[3] See R. 15, 401-03. Likewise, the information in the report regarding the functional limitations caused by Plaintiff's pain is relevant to her credibility with respect to her subjective complaints. See R. 16-17, 401-03. Given these considerations, the content of Dr. Bieltz's June 8, 2009 report plainly suggests that it is non-cumulative evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Robinson, 365 F. App'x at 996.

However, the Commissioner contends that Dr. Bieltz's opinion is nonetheless immaterial, asserting that "it does not relate to the time period covered by the ALJ's decision . . . . [and] does not contain any information indicating that it relates back to the time period covered by the ALJ's decision." Comm'r's Br., p. 11. The Court finds this contention unpersuasive. Initially, the Court notes that the time period covered by the ALJ's opinion

---

[3] Of note, a claimant faces only a "mild" burden to show that an impairment is severe at Step Two of the sequential process, which is referred to as the "slight abnormality test" and only serves to screen out clearly groundless claims. McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); see also Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987); Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*).

9

is October 21, 2004 through March 25, 2009, and Dr. Bieltz's new report is dated June 8, 2009, a mere two and a half months after the covered period. Cf. Barclay v. Comm'r of Soc. Sec. Admin., 274 F. App'x 738, 743 (11th Cir. 2008) (*per curiam*) (finding that new evidence consisting of medical records dated two to four years after the relevant time period provided no basis for remand). Moreover, there is no indication that the impairments and limitations discussed in Dr. Bieltz's June 8th report suddenly appeared or rapidly progressed during the two and a half month period following the ALJ's decision. Furthermore, contrary to the Commissioner's assertion that there is nothing indicating that the new evidence relates to the relevant time period, Dr. Bieltz indicated in his June 8th report that his assessment of Plaintiff's functional limitations was based, at least in part, on his previous treatment of Plaintiff and prior medical evidence. See R. 402-03.

Equally unavailing is the Commissioner's argument that the Court should affirm his decision despite the new evidence because Dr. Bieltz's June 8th report is "unsupported and inconsistent with the evidence in the record." Comm'r's Br., p. 11. In support of this argument, the Commissioner asserts that Dr. Bieltz's new report is inconsistent with his own previous treatment notes. In particular, the Commissioner points to the statements from Dr. Bieltz's 2004 treatment notes that Plaintiff was capable of working 40 hours per week and that her elbow pain appeared to be "out of proportion"; the Commissioner also maintains that Dr. Bieltz's 2008 treatment notes fail to mention any significant functional limitations, indicate that he only advised Plaintiff to pursue conservative treatment, and show that Plaintiff refused an injection that was offered to alleviate her hip pain. Id.

The Court finds that the Commissioner has failed to show any meaningful

inconsistency between Dr. Bieltz's June 8th report and his previous treatment notes. Dr. Bieltz's finding that Plaintiff was capable of full time work and experienced "out of proportion" elbow pain in 2004 does not contradict his findings regarding Plaintiff's ability to do work-related activities five years later; it is the Commissioner, not Plaintiff, whose chronology is off-base in this instance. In addition, inspection of Dr. Bieltz's 2008 treatment notes reveals that Dr. Bieltz recommended her conditions be treated with therapy rather than surgery, R. 391-97, although he stated in one report that "[i]f Plaintiff doesn't improve with [therapy] then we will probably send her to a neurosurgeon for a possible surgical intervention." R. 393. The 2008 treatment notes likewise indicate that Plaintiff did not refuse treatment for her hip pain outright, but rather that she chose to try to treat the pain with therapy before receiving an injection. R. 358. Furthermore, the absence of a discussion of Plaintiff's work-related limitations in the 2008 treatment notes is unremarkable given that the focus of such records are Plaintiff's complaints and possible treatment options for her conditions. Therefore, the Court rejects the Commissioner's contention that Dr. Bieltz's June 8th report should be disregarded because of purported inconsistencies with his previous treatment notes. See Mitchell-Holliman v. Comm'r of Soc. Sec., Case No. 6:06-CV-1789, 2008 U.S. Dist. LEXIS 6427, at *16-17 (M.D. Fla. Jan. 3, 2008) (recommending that case be remanded for consideration of new, material evidence submitted to AC that was not inconsistent with previously admitted record evidence), *adopted as opinion of district court*, 2008 U.S. Dist. LEXIS 4779 (M.D. Fla. Jan. 23, 2008).

In sum, the Court finds that Dr. Bieltz's June 8th report constitutes new, material evidence regarding Plaintiff's RFC that was provided to the AC in support of Plaintiff's

request for review of the ALJ's unfavorable decision. See Robinson, 365 F. App'x at 996. Taking such evidence into account, the Commissioner's decision to deny Plaintiff's applications for DIB and SSI is not supported by substantial evidence. See Ingram, 496 F.3d at 1261-62. This case should therefore be remanded to the Commissioner for further consideration in accordance with this opinion.[4]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**, pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 10th day of January, 2012, at Augusta, Georgia.

_____
W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[4] In light of the Court's determination that the decision to deny Plaintiff benefits is not supported by substantial evidence in light of the new evidence submitted to the AC, the Court need not reach the remainder of Plaintiff's contentions. Of course, on remand, Plaintiff's claims must be evaluated in compliance with the applicable regulations and case law in all aspects. For example, the entirety of the relevant evidence must be taken into account in determining the severity of Plaintiff's alleged impairments and in assessing Plaintiff's subjective complaints and RFC. See 20 C.F.R. §§ 404.1520(e) & 416.920(e); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). Furthermore, if a Step Five determination proves necessary, the determination of whether Plaintiff is capable of performing other work must be based solely on jobs that she is capable of performing in light of her RFC, age, education, and work experience that exist in sufficient numbers in the national and regional economies. See 20 C.F.R. §§ 404.1512(g), 404.1560(c), 416.912(g), & 416.960(c).